UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MALIKA RILEY, et al., | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | ) Case No. 4:21-cv-01328-SRC |
| | ) |
| OLIN CORPORATION, et al., | ) |
| | ) |
| Defendant(s). | ) |

**Memorandum and Order**

Following the Court's dismissal of their case, Docs. 31, 32, Malika Riley and Takeeya Sharonte Reliford move for leave to amend their complaint, Doc. 33. Defendants oppose the motion, asserting futility. Doc. 35. In their opposing brief, Defendants attached exhibits that Riley and Reliford move to strike. Doc. 37. The Court, concluding that the amendments do not survive a futility challenge, denies Riley and Reliford's Motion for Leave to Amend and denies the Motion to Strike.

**I.    Background**

For purposes of deciding the motion for leave to amend, the Court accepts as true the following facts that Riley and Reliford allege in their proposed amended complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Zutz v. Nelson*, 601 F.3d 842, 850–51 (8th Cir. 2010) (applying *Twombly* pleading standard to determine whether proposed amended complaint stated a claim). Plaintiffs participated in a retirement plan through their employer, Olin Corporation, and named as defendants the following: Olin Corporation, Olin's board, and the plan's investment committee; the Court refers to them collectively as Defendants, and

individually as Olin, the Board, and the Committee; and the Court refers to the retirement plan as the Plan.

Riley and Reliford filed their original complaint alleging Olin breached its fiduciary duty of prudence and failed to monitor the Committee. Doc. 1 at ¶¶ 112–25. Defendants then moved to dismiss the case, Doc. 19, and Riley and Reliford responded, informally requesting permission to amend their complaint, Doc. 23. In dismissing Riley and Reliford's claim without prejudice, the Court denied, on procedural grounds, their request to amend. Doc. 31 at p. 15. Riley and Reliford responded by filing a proper motion for leave to amend. Doc. 33.

To support their breach-of-fiduciary-duty claim, Riley and Reliford allege that Defendants failed to adequately monitor the Plan's recordkeeping expenses, Doc. 33-1 at ¶¶ 76–91, failed to prudently select investment options because of excessive investment fees, *id.* at ¶¶ 92–109, and maintained underperforming funds in the Plan, *id.* at ¶¶ 110–19. First, regarding excessive recordkeeping expenses, Riley and Reliford add allegations of "Comparable Plans" that have more affordable recordkeeping fees, including three which use the same record keeper and receive "virtually identical services." *Id.* at ¶ 87. Riley and Reliford, however, do not identify any of the specific services provided by any of the plans.

Next, Riley and Reliford seek to bolster their claim that Defendants failed to prudently select investment-management funds. *Id.* at ¶¶ 92–109. They continue to rely on the same data, ICI medians and averages, and the allegation that Defendants could have utilized the collective-trust version of the funds. *Id.* But they clarify that "the collective investment trust version of the T. Rowe Price target date funds had the same underlying investments and asset allocations as their mutual-fund counterparts but had better annual returns and a lower net expense ratio." *Id.* at ¶ 105.

Finally, concerning the underperforming funds, Riley and Reliford include the original underperforming fund, and allege that three additional funds were underperforming. Riley and Reliford add tables comparing the returns of the underperforming funds to their respective Morningstar-fund-category-benchmark index and other actively managed funds in the same category. *Id.* Riley and Reliford do not allege factual similarities among funds of the same categories but rely on Morningstar's similar categorization of the funds. *Id.*

To support their claim of futility, Defendants included prospectuses—analyzing funds that Riley and Reliford referred to when comparing different funds' return rates—as exhibits attached to its opposition. Doc. 35. Riley and Reliford argue that Defendants improperly attached exhibits to a pleading and that the Court should strike them. Doc. 37. Defendants assert that the Court can and should consider the prospectuses. Doc. 39.

## II.     Standards

### A.     Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure, which governs motions for leave to amend pleadings, states that courts "should freely give leave [to amend] when justice so requires." While this standard may change if a court intends an order be final, *In re SuperValu, Inc.*, 925 F.3d 955, 961 (8th Cir. 2019), Rule 15 applies to nonfinal orders, such as here, a dismissal without prejudice, *Mountain Home Flight Serv., Inc. v. Baxter County*, 758 F.3d 1038, 1045–46 (8th Cir. 2014) (requiring express intent or clear implication to dismiss without ability to amend). Under Rule 15's liberal amendment policy, "denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018)

3

(quoting *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001)); *see also Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) ("A court abuses its discretion when it denies a motion to amend a complaint unless there exists undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.").

"An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule 12(b)(6).'" *Hillesheim*, 897 F.3d at 955 (quoting *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)).  In other words, "[a]lthough ordinarily the decision of whether to allow a plaintiff to amend the complaint is within the trial court's discretion, when a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion . . . ." *In re Senior Cottages of Am.*, LLC, 482 F.3d 997, 1001 (8th Cir. 2007) (citing Fed. R. Civ. P. 12).

The Court applies the Rule 12(b)(6) standard set forth in its earlier order.  *See* Doc. 31 at pp. 4–5.  Additionally, while a court considers only the facts alleged in the complaint, the Court may consider "matters of public record and materials that are 'necessarily embraced by the pleadings.'" *Meiners v. Well Fargo & Co.*, No. 16-3981, 2021 WL 2303968, at *2 (D. Minn. May 25, 2017) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)), *aff'd*, *Meiners v. Wells Fargo & Co.*, 898 F.3d 820 (8th Cir. 2018).  Where a "complaint references returns data for [funds], the court properly considers the . . . prospectuses [of the funds]." *Id.*

**III.   Discussion**

    **A.   Leave to Amend**

        **1.   Breach-of-Fiduciary-Duty Claim**

4

The Court applies the legal standard set forth in its earlier order. Doc. 31 at p. 6. In that order, the Court found that Riley and Reliford's claims regarding recordkeeping fees, investment-management fees, and an underperforming fund failed to state a breach-of-fiduciary-duty claim. Doc. 31. Riley and Reliford move to amend their original complaint to add additional facts to support this claim. Doc. 33. Defendants claim the amended complaint fails to correct the "fatal deficiencies." Doc. 35 at p. 8. The Court finds that any amendment to the breach-of-fiduciary-duty claim would be futile. The Court addresses each breach-of-fiduciary-duty theory in turn.

### a. Recordkeeping fees

The Court previously held that Riley and Reliford's original complaint failed to state a breach-of-fiduciary-duty claim for excessive recordkeeping fees because: 1) a revenue-sharing fee model does not imply imprudence; 2) courts reject the NEPC survey "as sound bases for comparison because it lacks in detail[,]" making it fail as a meaningful benchmark; 3) Riley and Reliford's reliance on "expert opinions proffered by plaintiffs in other cases, an unspecified declaration, and the terms of a settlement agreement reached in another unrelated case" did not provide a meaningful benchmark; and 4) the investment committee does not have to "conduct periodic requests for proposal and renegotiate." Doc. 31 at pp. 8–10. In reference to a meaningful benchmark, the Court held that "the plaintiff must 'plead that the administrative fees are excessive in relation to the *specific services* the recordkeeper provided to the *specific plan* at issue.'" *Id.* at p. 8 (quoting *Perkins v. United Surgical Partners Int'l Inc.*, No. 3:21-cv-00973, 2022 WL 824839, at *6 (N.D. Tex. Mar. 18, 2022)); *see also Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 280 (8th Cir. 2022) (analyzing the specific services provided when comparing an excessive-recordkeeping-fee claim, even at the motion to dismiss stage).

5

Riley and Reliford's attempts to cure their deficiencies regarding excessive-recordkeeping fees fail.  First, they continue to rely on NEPC data that the Court found lacked detail.  *See* Doc. 33-1 at ¶¶ 83–85; Doc. 31 at pp. 8–9.  Next, they do not allege additional details about the services themselves, which the survey lacks.  Riley and Reliford do add a new table they allege evaluates "comparable plans of similar sizes and assets," including three plans that used the same record keeper and had "virtually identical services as the Plan."  Doc. 33-1 at ¶ 87. But the table also fails to include any facts about the specific services or specific plans beyond the assertion that the plans have "similar sizes and assets" and the conclusory language describing the services as "virtually identical."  *See* Doc. 33-1 at ¶ 87.  The conclusory allegation regarding the "virtually identical" services does not meet the standard "that the administrative fees are excessive in relation to the *specific services* the recordkeeper provided to the *specific plan* at issue."  *Wehner v. Genentech, Inc.*, No. 20-cv-6894, 2021 WL 2417098, at *5 (N.D. Cal. June 14, 2021).

Similarly, Riley and Reliford's conclusory argument that "recordkeepers in the marketplace offer the same range of services" fails to allege what specific services any of the plans provide.  Doc. 33-1 ¶ 76; *see also* Doc. 36 at p. 8.  It may be true that cheaper options were available, but without knowing what services the plans provided, the proposed amendments do not provide information sufficient to plausibly allege that the compared funds are meaningful benchmarks.  *See Meiners*, 898 F.3d at 823 (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009)) ("[In *Braden*,] [w]e found that different shares of the same fund were a meaningful benchmark, but Meiners does not match that benchmark by alleging that cheaper alternative investments with *some* similarities exist in the marketplace.").

Riley and Reliford argue that the Court should not resolve this "factual question" on the pleadings, citing as their sole support a district court case, *Morin v. Essentia Health*, which does not discuss the use of a meaningful benchmark for comparisons. Doc. 36 at pp. 8–9 (citing No. 16-CV-4397, 2017 WL 4083133, at *11 (D. Minn. Sept. 14, 2017), *report and recommendation adopted*, No. 16-CV-4397, 2017 WL 4876281 (D. Minn. Oct. 27, 2017)). And since *Morin*, the Eighth Circuit decided *Meiners*, requiring courts to analyze whether a meaningful benchmark exists at the motion-to-dismiss phase. *See Meiners*, 898 F.3d at 822 ("[P]laintiff must provide a sound basis for comparison—a meaningful benchmark.")

Riley and Reliford still do not plausibly allege that the investment committee improperly failed to conduct periodic requests for proposals and renegotiate the fees. In doing so, they fail to address previous shortcomings of the original complaint. *See* Doc. 31 at p. 10. For these reasons, the Court denies Riley and Reliford's amendments regarding excessive-recordkeeping fees on the basis of futility.

### b.      Underperforming Funds

In their original complaint, Riley and Reliford allege only one underperforming fund, Doc. 1 at ¶¶ 108–111, which the Court held lacked a meaningful benchmark, Doc. 31 at p. 14. Riley and Reliford, first, attempt to cure this by comparing the fund to the Morningstar Mid-Cap Growth as a benchmark index, as well as other funds within the same Morningstar fund category. Doc. 33-1 at ¶ 114. They also add allegations that the investment committee should have replaced three additional funds that were "imprudent." *Id.* at ¶¶ 116–19. Riley and Reliford compare each of these allegedly imprudent funds to their respective Morningstar-category-benchmark index and other funds within the same Morningstar fund category. *Id.*

The Court first considers whether the comparator funds are meaningful benchmarks. At this stage, the Eighth Circuit directs courts to look beyond allegations that "costs are too high, or returns are too low" and evaluate the funds' "holdings, investment style, and strategy" to determine meaningful benchmarks. Doc. 31 at p. 14 (citing *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 484–87 (8th Cir. 2020)); *see also Matousek*, 51 F.4th at 280–81. The Eighth Circuit has not upheld the use of Morningstar categories as an indicator of a meaningful benchmark. Some district courts have used Morningstar categories as indicators of comparable funds and meaningful benchmarks, without engaging in the Eighth Circuit's stringent meaningful-benchmark analysis. *See Dover v. Yanfeng US Auto. Interior Sys. I LLC*, 563 F. Supp. 3d 678 (E.D. Mich. 2021) (collecting cases); *see also Moler v. Univ. of Md. Med. Sys.*, No. 1:21-cv-01824, 2022 WL 2756290, at *4 n.7 (D. Md. July 13, 2022) (citing *Vellali v. Yale Univ.*, 308 F. Supp. 3d 673, 687–88 (D. Conn. 2018)).

Riley and Reliford argue that Morningstar, "a widely accepted, independent and reliable source of mutual fund data," serves as a meaningful benchmark, as do the comparator funds to the same category. Doc. 36 at p. 11. Riley and Reliford rely on *Garcia v. Alticor, Inc.*, to say that proving a fund had less-costly and better-performing alternatives was enough to show a breach of duty. No. 1:20-cv-1078, 2021 WL 5537520, at *5 (W. D. Mich. Aug. 9, 2021). However, *Garcia* does not address whether the alternatives were meaningful benchmarks, as required by the Eighth Circuit. *Id.* While Riley and Reliford add other funds they claim to be overpriced but underperforming, they do not allege anything about the funds' holdings, investment style, or strategy that shows how the comparator funds qualify as meaningful benchmarks. In fact, comparing the prospectuses, as the Eighth Circuit permits at this stage,

8

*Meiners*, 898 F.3d at 823, many of the funds Riley and Reliford propose as comparators utilize different strategies in their investment approaches. Doc. 35 at pp. 14–16.

Even if the Court were to recognize the Morningstar fund category, and plans within, as meaningful benchmarks, the Court must next look to whether Defendants' process was imprudent. *See* Doc. 33-1 at ¶¶ 114–19; *Moler*, 2022 WL 2756290, at *4 n.7 (accepting funds within the same Morningstar categories and Morningstar benchmark indexes as a meaningful benchmark). In *Moler*, significantly cheaper comparator funds within the same category and the benchmark itself both outperformed the funds at issue over a ten-year period. *Moler*, 2022 WL 2756290, at *4; *see also* Complaint at ¶ 132, *Moler*, 2022 WL 2756290, (alleging expense ratios between 1.23% and .14% lower than the funds at issue). Another three comparator funds underperformed at the five-year mark. *Moler*, 2022 WL 2756290, at *4. The court focused on the long-term underperformance, over the course of ten years, distinguishing from cases that focused on short-term underperformance. *Id.* at *5. Ultimately, allegedly overpriced features of a plan compared to others does not necessarily show imprudence in the fiduciary's process. *Forman v. TriHealth, Inc.*, 40 F.4th 443, 448 (6th Cir. 2022).

For each of the funds, Riley and Reliford allege the prices were too high for their performance, laying out a year-by-year analysis of the returns from the funds compared to other funds in the same Morningstar-fund categories. Doc. 33-1 at ¶¶ 114–18. First, Riley and Reliford compare Eaton Vance Atlanta Capital SMID Cap R6 against Morningstar US Mid Cap Brd Grt TR USD benchmark index, which it outperformed in four out of the five years given for comparison. *Id.* at ¶ 114. Additionally, while the other funds within this category did outperform the Eaton Vance Atlanta Capital SMID Cap R6 in all years but 2021, the costs of the

9

comparator funds were only marginally cheaper, averaging just a .1% lower average expense ratio.  *Id.*

Second, the Artisan International Value fund is in the same category as the Morningstar Global ex-US TME NR USD benchmark index.  *Id.* at ¶ 116.  The Artisan International Value fund outperformed the benchmark two out of the five years, and the years it did not outperform, the difference was minimal.  *Id.*  While the other funds Riley and Reliford compare to outperformed the fund each year except 2021, they were in the same price range—one of which was more expensive than the Artisan International Value fund.  *Id.*

Third, the PIMCO All Asset Instl fund is in the same category as the Morningstar Mod Aff Tgt Risk TR USD benchmark index.  *Id.* at ¶ 117.  The PIMCO All Asset Instl fund outperformed the benchmark two out of five years.  *Id.*  While the losses here were higher on the years the benchmark outperformed, the expense ratio was lower than two of the comparator funds, and only .01% higher than the third.  *Id.*

Finally, the Metropolitan West Total Return Bd I fund is in the same category as the Morningstar US Core Plus Bd TR USD benchmark index.  *Id.* at ¶ 118.  The Metropolitan West Total Return Bond I fund outperformed the Morningstar benchmark in four out of five years.  *Id.*  Combining this performance with the relatively average expense ratio does not imply that the investment committee acted imprudently in selecting this fund.  The funds that Riley and Reliford allege underperformed differ from those at issue in *Moler*.  The allegedly underperforming funds here outperformed their Morningstar benchmark index and were within similar price ranges as the other comparator funds, while *Moler* compared to funds with drastically lower expense ratios.  *Id.*; *see also* Complaint at 39–44, *Moler*, 2022 WL 2756290.

10

"Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that breaches a fiduciary duty." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022).  Indeed, as the *Smith* court noted, "[p]recipitously selling a well-constructed portfolio in response to disappointing short-term losses, as it happens, is one of the surest ways to frustrate the long-term growth of a retirement plan." *Id.* (citing Charles D. Ellis, *Winning the Loser's Game* 7, 83–86, 119 (4th ed. 2002)).  In short, performing below average does not, in and of itself, an ERISA violation make. *Id.*

Thus, Riley and Reliford do not allege facts that render the comparator funds a meaningful benchmark.  Even if the Court considers the comparator funds as a meaningful benchmark, these do not imply, or plausibly allege, that Defendants acted imprudently because the funds outperformed the benchmarks and were within the same price range as the compared funds.  Accordingly, the Court denies, on futility grounds, the motion for leave to amend the breach-of-fiduciary-duty claim for failure to remove underperforming funds.

        **c.**      **Investment-management funds**

The Court previously held that ICI data was not a meaningful benchmark and that the "bare allegation that the [P]lan" maintained mutual funds rather than collective-trust versions of the funds did not state a breach-of-fiduciary-duty claim.  Doc. 31 at pp.10–13.  In their proposed amended complaint, Riley and Reliford allege that the mutual fund and the cheaper collective trust included "the same underlying investments and asset allocations."  Doc. 33-1 ¶ 105.  Still, they do not address the distinction between the two types of funds beyond this allegation.

11

Mutual funds and collective trusts are not typical comparators or meaningful benchmarks. *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1305–06 (D. Minn. 2021) (collecting cases). While the Ninth Circuit recently held that this was a factual question when the underlying investments were the same, it did not apply the Eighth Circuit's meaningful-benchmark pleading standard as set forth in *Meiners* and *Davis*. *Davis v. Salesforce.com, Inc.*, 2022 WL 105557, at *2 (9th Cir. April 8, 2022) (upholding a similar claim utilizing the same language to hold that "defendants' retention of allegedly higher-cost target date funds over collective investment trusts cannot simply be deemed reasonable as a matter of law without further factual development").

The Eighth Circuit looks to holdings, investment strategies, and risk profiles when analyzing meaningful benchmarks at this stage. *Matousek*, 51 F.4th at 280–81 (holding a meaningful benchmark is unlikely where investment strategies and risk profiles are different). Similarly, courts have held that no meaningful benchmark exists when the regulating procedures and disclosure requirements of funds differ drastically. *Rosenkranz v. Altru Health Sys.*, No. 3:20-cv-168, 2021 WL 5868960 at *2, 9 (D.N.D. Dec. 10, 2021) (holding that collective trusts and mutual funds cannot be meaningful benchmarks when relying on the complaint that stated mutual funds and collective trusts have different regulations, administering procedures, and disclosure requirements); *see also Parmer*, 518 F. Supp. 3d at 1305–06 (collecting cases).

Riley and Reliford allege that "Defendants could not have engaged in a prudent process" because the Plan "qualified for the collective trust versions of these funds (which were available since 2012) at all times during the class period." Doc. 33-1 at ¶ 105. Defendants did switch to the collective-trust versions in 2019. *Id.* Riley and Reliford claim this delay was imprudent because "the collective investment trust version of the T. Rowe Price target date funds had the

12

same underlying investments and asset allocations as their mutual fund counterparts but had better annual returns and a lower net expense ratio." *Id.*  While this conclusory language parallels that of *Salesforce.com*, 2022 WL 105555, at *2, it does not satisfy the pleading standards of *Meiners* and *Davis*.  Further, even where a collective trust and mutual fund have the same underlying investments, the Securities Act governs mutual funds, not collective trusts—creating different regulatory requirements.  *See* 15 U.S.C. § 77c (exempting collective trusts from SEC regulations but not exempting mutual funds); *see also* Lois Yurow, et al., *Mutual Funds Regulation and Compliance Handbook* § 3.3 (clarifying that mutual funds are governed by the Securities Act).[1]

Riley and Reliford point to no case where a court has found that collective-trust versions of a fund are a meaningful benchmark.  While fiduciaries "normally ha[ve] a continuing duty of some kind to monitor investments and remove imprudent ones," *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 741 (2022), the Eighth Circuit still requires a meaningful benchmark to identify imprudent funds, *Matousek*, 51 F.4th at 280.  Without pleading facts to support the alleged similarities on which the Court can perform a meaningful-benchmark inquiry or address why the Court should ignore the regulatory differences, the Court finds that Riley and Reliford do not plausibly allege that Defendants failed to act reasonably when maintaining the mutual-fund versions of the funds.  Thus, Riley and Reliford's proposed amended complaint, considered as a whole, does not state breach-of-fiduciary-duty claim under an excessive-investment-fees theory—or any other theory.

---

[1] For more information on the difference between mutual funds and collective trusts, see Robert Powell, *Not Your Normal Nest Egg*, The Wall Street Journal (Mar. 17, 2013, 4:00 PM), http://www.wsj.com/articles/SB10001424127887324296604578177291881550144 (discussing that collective trusts are regulated by the Office of the Comptroller of the Currency, not the SEC; have simple disclosure requirements; and cannot advertise or issue formal prospectuses).

### 2. Failure-to-monitor-other-fiduciaries claim

The Court previously dismissed Riley and Reliford's failure-to-monitor claim because they failed to state a breach-of-fiduciary-duty claim. Doc. 31 at p. 14. The failure-to-monitor claim "is wholly derivative of the" breach-of-fiduciary-duty claim. *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1308 (D. Minn. 2021) (citing *Wildman v. American Century Servs., LLC*, 237 F. Supp. 3d 902, 915 (W.D. Mo. 2017)). Since Riley and Reliford do not plausibly allege that Defendants breached their fiduciary duty, they also do not plausibly allege Defendants failed to monitor fiduciaries.

### B. Motion to Strike

While the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f), memoranda and exhibits connected to memoranda are not pleadings, Fed. R. Civ. P. 7(a) ("Only these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."). Thus, Riley and Reliford's motion to strike lacks a legal basis and the Court denies it. *See, e.g., Carlson Mktg. Grp., Inc. v. Royal Indem. Co.*, No. 4-cv-3368, 2006 WL 2917173, at *2 (D. Minn. Oct. 11, 2006) (denying motion to strike because "neither a memorandum nor an affidavit is a 'pleading'").

Riley and Reliford also state the Court should not consider Defendants' attached prospectuses because they are matters outside the pleadings, which the Court cannot consider at the motion to dismiss stage. Doc. 38 at p. 4. However, where a plaintiff references "returns data" for funds, the Court may then consider the prospectuses for such funds. *Meiners*, 2021 WL

14

2303968, at *2; *see also Meiners*, 898 F.3d at 823 ("We recognize the district court determined that the Vanguard fund's performance was not a meaningful benchmark by considering prospectuses not attached to the complaint.  This was not improper.").  In their proposed amended complaint, Riley and Reliford reference each of the funds for which Defendants attached a prospectus—allowing the Court to consider prospectuses of such funds.  Doc. 33-1 at ¶¶ 114, 116–18.

## IV.  Conclusion

For the foregoing reasons, Riley and Reliford's breach-of-fiduciary-duty and failure-to-monitor-other-fiduciaries claims fail for futility purposes.  Thus, the Court denies Riley and Reliford's [33] Motion for Reconsideration and to Amend the Complaint.  Additionally, the Court denies Riley and Reliford's [37] Motion to Strike.

So Ordered this 24th day of January 2023.

*/s/ SLR. CR*

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE